NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

GEURYS SOSA,

                     Plaintiff,

v.

COUNTY OF HUDSON, NEW JERSEY;
HUDSON COUNTY CORRECTIONAL
CENTER; CFG HEALTH SYSTEMS,
LLC; CLAUDETTE BLAKE; MELESSIA
CYRUS; DR. MYRIAM STERLIN; DR.
PAUL ITTOOP; JANE LOWE; and ERIC
TAYLOR,

                     Defendants.

Civil Action No. 2:20-cv-00777-CCC-MF

**MEMORANDUM OPINION AND ORDER**

**CECCHI**, District Judge.

## I.      <u>INTRODUCTION</u>

This matter comes before the Court on the motion to dismiss (ECF No. 18) (the "Motion") filed by defendants CFG Health Systems, Claudette Blake, Dr. Myriam Sterlin, Dr. Paul Ittoop, Jane Lowe, and Melessia Cyrus (collectively "Defendants").[1]  The Defendants seek to dismiss plaintiff Geurys Sosa's ("Plaintiff") amended complaint ("AC") (ECF No. 5).  The Court decides the Motion without oral argument pursuant to Federal Rule of Civil Procedure 78.  For the reasons set forth below, the Motion is **DENIED**.

## II.      <u>BACKGROUND</u>

Plaintiff filed his initial complaint (ECF No. 1) on January 23, 2020, and subsequently amended it on January 28, 2020.[2]  Plaintiff alleges numerous federal and state civil rights violations occurred

---

[1] Hudson County Correctional Center ("HCCC"), County of Hudson, and Eric Taylor have not joined the Motion.  They filed a separate answer.  *See generally* ECF No. 17.

[2] The only change in the AC was the addition of Melessia Cyrus as a defendant.  *See* ECF No. 5 at 5-6.

throughout his seventeen-month civil immigration detention at HCCC.  ECF No. 5 at 2.  Prior to his confinement, Plaintiff was diagnosed with psoriatic arthritis and psoriasis, two severe but treatable autoimmune diseases that require constant oversight and treatment.  Id. at 7-8.  Before his arrest by ICE, Plaintiff was receiving "two systemic specialty medications, Otezla and Stelara" which were "effectively bringing his . . . [conditions] under control."  Id. at 9.  Once detained, Plaintiff alleges he was the victim of "grievously inadequate medical care" that led to his suffering.  Id. at 2-4.

The Defendants argue that the AC must be dismissed because it "facially shows non-compliance with the applicable statute of limitations period."  ECF No. 18 at 5.  Because "[e]ach and every discreet allegation of professional negligence and/or deliberate indifference occurred more than two years before the filing of Plaintiff's [original] Complaint," and "Plaintiff was clearly aware of same," Defendants assert that the statute of limitations was violated and "dismissal with prejudice is appropriate."  ECF No. 18 at 9.

In the alternative, Defendants argue that the Motion should be converted to one for summary judgment.  Id.  This would permit the Court to consider a grievance allegedly filed by Plaintiff that supposedly establishes that he became aware of his injuries outside the two-year limitations period.  Plaintiff argues that the continuing violations doctrine (an equitable tolling doctrine) applies because he was the victim of continuous maltreatment until he was granted emergency medical release by ICE.  If the doctrine applies—which this Court believes it does—Plaintiff's "late" filing was permissible.

## III.   DISCUSSION

### A.  Statute of Limitations and Accrual Date

On a Rule 12(b)(6) motion, a defendant may argue that a claim is time barred only if noncompliance with the applicable statute of limitations is plain on the face of the complaint.  *See George v. East Orange Hous. Auth.*, 687 F. App'x 122, 124-25 (3d Cir. 2017); *see also Berkery v. Verizon Commc'ns Inc.*, 658 F. App'x 172, 174 (3d Cir. 2016).  For § 1983 claims, the applicable statute of limitations is identical to the forum state's limitation period for personal injury actions.  *Garvin v.*

2

*City of Philadelphia*, 354 F.3d 215, 220 (3d Cir. 2003). Since the cause of action arose in New Jersey, the limitations period is two years. N.J. Stat. Ann. § 2A:14-2.

The accrual date of a § 1983 claim is strictly a question of federal law. *Wallace v. Kato*, 549 U.S. 384, 388 (2007). A cause of action will accrue, and the two-year statute of limitations will begin to run, "when the plaintiff knew or should have known of the injury upon which its action is based." *Kach v. Hose*, 589 F.3d 626, 634 (3d Cir. 2009) (quoting *Sameric Corp., v. City of Philadelphia*, 142 F.3d 582, 599 (3d Cir. 1998)). Plaintiff will usually suffer an injury "at the time of the last event necessary to complete the tort." *Id.* (citing *United States v. Kubrick*, 444 U.S. 111, 120 (1979)). This inquiry is objective; the Court will apply the reasonable person test to determine what the plaintiff should have known, not what he actually knew. *Id.* (citing *Barren v. United States*, 839 F.2d 987, 990 (3d Cir. 1988)). When evaluating a complaint on a motion to dismiss, the Court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in favor of the non-moving party. *See Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008).

Although Plaintiff argues in his opposition brief (ECF No. 26) that "a limitations bar is not clear from the face of the [AC]," the Court believes it is. ECF No. 26 at 10. Even construing the AC in favor of Plaintiff, without applying any equitable tolling doctrine, it is apparent from its face that all claims accrued outside the two-year statutory period. Plaintiff claims "[f]rom *day one*, Defendants provided grossly inadequate medical care to [Plaintiff] at [HCCC]." (emphasis added). ECF No. 5 at 2. The AC contains numerous instances throughout 2017 that were sufficient to alert a reasonable person of their injuries (e.g., failure to properly record diagnoses, failure to organize needed consultations with specialists, prescription of ineffective medications, and arbitrary deprivation of needed medications). *See* id. at 10-18. And though the alleged misconduct continued into early 2018, the necessary elements of the torts alleged (i.e., inadequate medical care, inadequate supervision and training of medical staff, and medical malpractice) were satisfied in 2017. *See* ECF No 5. at 33-52. The continuation of the egregious care into 2018 does not change this fact. Therefore, the accrual date would have occurred

3

sometime in 2017, and the complaint filed on January 23, 2020 would not comply with the applicable limitations period.  *See George*, 687 F. App'x at 124-25; *see also Berkery*, 658 F. App'x at 174.

However, Plaintiff argues that the continuing violations doctrine applies, creating an exception to the timely filing requirement, and the Court agrees.

## B. Continuing Violations Doctrine

The continuing violations doctrine "is an 'equitable exception to the timely filing requirement.'" *Tearpock-Martini v. Borough of Shickshinny*, 756 F.3d 232, 236 (3d Cir. 2014) (quoting *Cowell v. Palmer Twp.*, 263 F.3d 286, 292 (3d Cir. 2001)).  The doctrine applies "when a defendant's conduct is part of a continuing practice," and "more than the occurrence of isolated or sporadic acts."  *Cowell*, 263 F.3d at 292.  To establish whether an act is "continual," the Court will consider "(1) whether the violations are part of the same subject matter and (2) whether the violations occurred frequently."[3] *Cibula v. Fox*, 570 F. App'x 129, 135-36 (3d Cir. 2014) (citing to *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 165-67 (3d Cir. 2013)).  And if "the last act [in] the continuing practice falls within the limitations period . . . the court will grant relief for the earlier related acts that would otherwise be time barred."  *Randall v. City of Phila. Law Dep't*, 919 F.3d 196, 198 (3d Cir. 2019) (quoting *Cowell*, 263 F.3d at 292).  Essentially, because of the doctrine, the limitations period will begin to accrue the day the last unlawful act takes place.

---

[3] Following the Supreme Court's decision in *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002), this Circuit subsequently eliminated the "degree of permanence" factor from the continuing violations doctrine.  *See Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 165-67 (3d Cir. 2013) ("It is clear that there is no longer a permanency requirement under the continuing violation doctrine . . . ."); *see also Thomas v. Duvall*, No. 3:16-CV-00451, 2019 WL 8013742, at *12 n.12 (M.D. Pa. Oct. 3, 2019) (noting that even though *Cowell* listed a third factor, "the Third Circuit has since recognized that this factor does not need to be considered").  And though the continuing violations doctrine is most frequently applied to employment discrimination cases, this Circuit has applied the doctrine to § 1983 personal injury claims.  *See generally Cibula v. Fox*, 570 F. App'x 129 (3d Cir. 2014) (assessing whether to apply the continuing violations doctrine to a prisoner's § 1983 claims, but ultimately determining that the harm suffered was the result of one act, and not "continual unlawful acts"); *see also Davis v. N.J. Dep't of Corr.*, No. 10-6439, 2011 WL 5526081 (D.N.J. Nov. 14, 2011) (applying the continuing violations doctrine to alleged inadequate medical care while plaintiff was confined in state prison).

### i.   Subject Matter

Plaintiff argues that this first factor is satisfied because he was victim to "unconstitutional mistreatment [that] was pervasive and of the *same type* throughout his confinement at HCCC, up until he was released on January 30, 2018." (emphasis added).  ECF No. 26 at 17.

When assessing the subject matter, a Court must determine "whether the violations constitute the same type of discrimination, tending to connect them in a continuing violation." *Cowell*, 263 F.3d at 292.  In *Davis v. N.J. Dep't of Corr.*, No. 10-6439, 2011 WL 5526081, at *7 (D.N.J. Nov. 14, 2011), a case where the plaintiff alleged similar claims regarding "insufficient medical and mental health treatment," the Court stated, "it is evident that Plaintiff has set forth continuing violations of the same 'subject matter.'"

Here, we have a similar, if not identical situation to *Davis*.  Throughout the AC, Plaintiff alleges instances of "grossly inadequate medical care." *See generally* ECF. No. 5.  For example, the "deliberate indifference to [Plaintiff's] medical need for treatment of . . . [his conditions] by ignoring his diagnoses, not providing for treatment by appropriately qualified medical specialists, and insisting upon a course of woefully inadequate and ineffective topical creams." ECF No. 26 at 17-18 (citing to ECF No. 5 at 10-17).  These allegations all go to the heart of the same subject matter, the "grossly inadequate medical care." ECF No. 5 at 2.  This factor is satisfied.

### ii.   Frequency

The frequency factor assesses "whether the acts are recurring or more in the nature of isolated incidents." *Cowell*, 263 F.3d at 292.  There is no "specific standard for determining how close together the acts must occur to amount to a continuing violation." *Id.* at 295.  Rather, the acts must be of "substantially similar nature to those which were the basis of the original claim." *Id.*  Frequent deprivation of adequate medical treatment has been held to satisfy this factor. *See Carter v. Pa. Dep't of Corr.*, No. 08-0279, 2008 WL 5250433, at *10 (E.D. Pa. Dec. 17, 2008).

Per the AC, Plaintiff was frequently subjected to grossly inadequate medical care over his seventeen-month detention.  Plaintiff alleges that Defendants failed to properly record his diagnoses upon arrival to the facility, failed to organize consultations with specialists, consistently treated him with ineffective topical ointment, and arbitrarily deprived him of medication prescribed by a specialist. *See* ECF No. 5 at 13-18.  Nurses visited Plaintiff "almost daily" and "repeatedly recorded his worsening skin and joints, increased pain, and the need for additional medical care."  ECF No. 5 at 3.  Despite the "readily-visible decline in [Plaintiff's] health," the staff "did nothing to change his course of inadequate treatment."  Id. at 13.  And though Defendants attempt to rebut each allegation of inadequate treatment in their reply brief (ECF No. 32 at 10-13), the AC is construed in favor of the non-moving party, and all well-pleaded facts are accepted as true.  *See Phillips*, 515 F.3d at 234.  The frequency factor is satisfied as alleged, establishing that the Defendants' conduct did amount to a practice of "continual unlawful acts."  *Cowell*, 263 F.3d at 293.

### iii.  Last Act in the Continuing Practice

Since the unlawful acts here are considered "continual" under *Cowell*, the final inquiry is to determine whether the last act occurred within the limitations period.  *See Randall*, 919 F.3d at 198.  By the time Plaintiff was granted emergency medical release on January 30, 2018, his conditions had "progressed uncontrolled."  ECF No. 5 at 18.  He alleges that his last week in detention included the same neglect and inadequate care he had experienced throughout his time detained at HCCC.  ECF No. 26 at 7-8.[4]  Specifically, it included the continued application of ineffective cream that was "inconsistent

---

[4] When deciding a Rule 12(b)(6) motion to dismiss, it is permissible for the Court to consider "exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents."  *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010); *see also* 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1363 (3d ed. 2008) ("Typically, the only information necessary for a decision on the [12(b)(6)] motion is to be found in the pleading itself or in exhibits accompanying the pleading or items incorporated by reference in the pleading.").  Because Plaintiff incorporates his medical record into the AC, it is permissible to consider it when deciding the motion to dismiss without converting it into a motion for summary judgment.

with the standard of care for severe psoriasis and severe psoriatic arthritis." Id. (citing to Plaintiff's Medical Record, ECF No. 27 at 930-37). And because this last instance of inadequate treatment took place on January 29, 2018, and Plaintiff filed his complaint on January 23, 2020, the last continual unlawful act occurred within two years of the original filing. After balancing the equities, the continuing violations doctrine will apply, making Plaintiff's "late" filing permissible.

### iv.   Plaintiff's Awareness of Injuries

Defendants argue that the doctrine should not apply here because Plaintiff was aware of his injuries throughout his detention. *See Morganroth & Morganroth v. Norris, McLaughlin & Marcus, P.C.*, 331 F.3d 406, 417 n.6 (3d Cir. 2003) ("[The continuing violations doctrine] does not apply when plaintiffs are aware of the injury at the time it occurred."). They argue the doctrine is "an equitable exception to a strict application of the statute of limitations" and that it "should not provide a means for relieving plaintiffs from their duty to exercise reasonable diligence in pursuing their claims." *Cowell*, 263 F.3d at 295.

The equities favor applying the doctrine here. As mentioned previously, this Circuit removed the "degree of permanence" factor from the continuing violations doctrine. *See Mandel*, 706 F.3d at 165-67. That factor specifically assessed "whether the [unlawful] act had a degree of permanence which should trigger plaintiff's awareness of and duty to assert his/her rights." *Cowell*, 263 F.3d at 292. Given the explicit removal of this factor, the Court will prioritize equitable balancing without concerning itself with the permanence of the injury. The doctrine is applicable here.

### C.   Conversion to Summary Judgment

In the alternative, Defendants argue that the Court should consider a grievance, allegedly filed by Plaintiff while detained, by converting their motion to dismiss into a motion for summary judgment pursuant to Rule 12(d). ECF No. 18 at 9. Under Rule 12(d), "the court must convert a motion to dismiss to a summary judgment motion if it considers extraneous evidence submitted by the defense . . . to

afford the plaintiff an opportunity to respond."[5]  *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).  However, deciding whether to consider outside materials is a "matter of discretion for the court."  *Brennan v. Nat'l Tel. Directory Corp.*, 850 F. Supp. 331, 335 (E.D. Pa. Apr. 28, 1994) (citing *Wiley v. Hughes Capital Corp.*, 746 F. Supp. 1264, 1275 (D.N.J. Aug. 31, 1990)).  And, where little to no discovery has occurred, "courts have held that exercise of . . . discretion not warranted."  *Id.*  (internal citations omitted).

As Plaintiff argues, to allow this one grievance, without any inquiry into its legitimacy, would be highly improper and unjust.  *See* ECF No. 26 at 24-25.  There has been little to no discovery at this point.  As such, the Court declines to convert the motion to one for summary judgment.  Thus, at this time, the merits of the grievance need not be considered.

---

[5] This is different when the *complaint* relies on an outside document because there, "the plaintiff obviously is on notice of the contents of the document, and the need for a chance to refute evidence is greatly diminished."  *Pension Benefit Guar. Corp.*, 998 F.2d at 1196-97.

## IV.    **CONCLUSION**

This Court has reviewed all relevant submissions.  For the reasons set forth in the above Memorandum:

Accordingly, **IT IS** on this 28th day of September 2020:

**ORDERED** that Defendant's Motion to Dismiss dated February 26, 2020 (ECF No. 18) is **DENIED** in its entirety.

**SO ORDERED**.

DATED: September 28th, 2020

_____
  **CLAIRE C. CECCHI, U.S.D.J.**